IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **BRUCE TENUTA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 22 C 6087 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| **INTERNATIONAL BUSINESS MACHINES** ) | |
| **CORP.,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Bruce Tenuta, claims that defendant, International Business Machines Corp. ("IBM"), laid him off because of his advanced age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*. Based on an arbitration provision in plaintiff's severance agreement, the parties submitted plaintiff's claim to arbitration, and the arbitrator ruled in IBM's favor. Plaintiff petitions this Court to vacate the arbitration award, arguing that the arbitrator refused to hear crucial evidence, in violation of the Federal Arbitration Act, 9 U.S.C. § 10(a)(3). For the following reasons, the petition is denied.

**BACKGROUND**

**I.     Plaintiff's IBM Employment and Termination**

The Court takes the following factual background from the "Undisputed Facts" section of the arbitrator's Final Award. (Final Award, ECF No. 5-3, at 4-11.)

On January 1, 2017, plaintiff's employer, Truven Health Analytics ("Truven"), was acquired by Watson Health, a division of IBM. After the acquisition, plaintiff became a "band 10," vice-president level employee (the highest non-executive level) for IBM, working out of IBM's

Chicago office. Plaintiff managed the Product Support team, part of the larger Provider Client Experience team within Watson Health's Value Based Care-Provider ("VBC") unit. He reported to Sharlyn Jordan, who oversaw day-to-day functions of the Provider Client Experience Team. Jordan reported to Martha Thorne, the general manager of the VBC unit.

In the wake of the acquisition, plaintiff's primary responsibility was overseeing the integration of certain Truven business activities into Watson Health's operations. As the integration proceeded and operations were streamlined, the ambit of plaintiff's authority narrowed; he went from supervising between one hundred and two hundred employees to supervising a total of twenty, and some of those only indirectly.

Despite the streamlining of operations, Watson Health remained unprofitable. In approximately February 2018, Watson Health's leadership advised Thorne that she would have to implement a "resource action" or "RA," IBM's term for a reduction in force or layoff, reducing the headcount within her management chain by about four hundred employees. By this time, the migration of products that plaintiff was supervising was complete for some products, and ahead of schedule for others. Jordan anticipated the transfer of business activities under plaintiff's supervision would be complete by August 2018.

Thorne directed Jordan to select thirty-five employees from her team for termination. Concerned that her team would struggle to keep up with its work if reduced in such numbers, Jordan asked Thorne for advice about whom to select. Thorne informed Jordan that Product Support would move from VBC to "Ops/Support," a separately managed team, and that the Market Expert and CDQM products, two of the products the Provider Client Experience team supported, were being eliminated (or "going away").

Jordan considered approximately one hundred employees for termination, most of whom were lower-level band 6 or 7 employees. She ultimately selected thirty-five, including plaintiff. She identified the elimination of at least 80% of plaintiff's work as the reason for selecting him for termination. In her mind, Jordan explained, plaintiff's primary job duties were to supervise work that would be complete by the time the resource action was to be implemented, so he was a logical choice for separation. Plaintiff separated from IBM on August 31, 2018, at age 67. He received severance in exchange for executing a separation agreement that included an arbitration clause. The Market Expert and CDQM products were not immediately eliminated, causing the Ops/Support to become overwhelmed after a few months and to require the transfer of a "band 9" manager to the Ops/Support team.

## II. Plaintiff's Arbitration Proceeding

On January 17, 2019, plaintiff submitted a demand for arbitration, asserting a claim of age discrimination. The parties' arbitration agreement authorized the arbitrator to grant discovery upon request if he "finds that the [requesting] party has demonstrated that it needs that discovery to adequately arbitrate the claim, taking into account the parties' mutual desire to have a speedy, less-formal, cost-effective dispute-resolution mechanism." (Separation Agr. at 28, ECF No. 5-4 at 29.) It also authorized the parties to file "motions permitted by the Federal Rules of Civil Procedure, including . . . motions to compel discovery" and "motions for summary judgment." (*Id.* at 27, ECF No. 5-4 at 28.)

In 2017, IBM CEO Ginni Rometty had publicly boasted that 50% of IBM employees were millennials. In discovery, plaintiff sought data from IBM to support a theory of systematic age discrimination. He filed a motion to compel IBM to provide certain "company-wide discovery" dating back to 2012, but the arbitrator ruled that plaintiff must limit his request to the years after

his employment with IBM began in 2017. Further, the arbitrator ruled that plaintiff was not entitled to the broad discovery he was seeking, in the absence of any "particulars showing a meaningful nexus between Tenuta's Resource Action in the Watson Health Unit and RA's elsewhere." (Arbitrator's Scheduling Order No. 10 (Oct. 28, 2020), ECF No. 22-2.) Plaintiff narrowed his request, but IBM maintained that the request was still overbroad, so plaintiff renewed his motion to compel. The arbitrator ruled that IBM was required to disclose certain information about the approximately one hundred employees whom Jordan considered for the 2018 resource action, but he did not require IBM to provide demographic data about all of the employees Jordan supervised, as plaintiff had requested. (Arbitrator's Order Regarding Discovery (Apr. 19, 2021) at 2, ECF No. 5-6.)

Plaintiff hired a labor economist, Dr. Mark Killingsworth, to analyze Jordan's selection decisions. Based on the limited data with which he was provided, Dr. Killingsworth was unable to determine that older workers were overrepresented among those who lost their jobs in the 2018 resource action. He warned, however, that this result was of limited probative value because he did not have access to demographic data about the employees who Jordan supervised but did not consider for termination. If, for example, Jordan supervised hundreds of employees and most of them were under forty, then it might be possible to "conclude that younger employees were disproportionately spared from being terminated." (Pl.'s Br. Ex. A at 7, ECF No. 5-1.)

In May 2021, plaintiff filed yet another motion to compel, again seeking broader demographic data about IBM employees reporting to Jordan but not considered for termination. The arbitrator denied the motion, reasoning that the requested information was unlikely to produce relevant evidence and would unduly delay the completion of discovery. (Arbitrator's Order No. 12 (May 19, 2021), ECF No. 22-3.)

IBM filed a motion for summary judgment on August 20, 2021. In September 2021, while the motion was still pending, plaintiff contacted the arbitrator to inform him that he had become aware of certain documents produced by IBM in *Townsley v. IBM*, Case No. 20 cv 969 (W.D. Tex.), which, plaintiff believed, provided additional support for his claims. Plaintiff had viewed some of these documents, which consisted of executive communications that, according to plaintiff, supported his theory that his termination was part of a broad scheme to terminate IBM's older workers and reduce the average age of the workforce. Plaintiff sought to reopen discovery to obtain these documents and submit them to the arbitrator as supplemental evidence in opposition to the pending motion for summary judgment. IBM objected, stating that these documents came from 2015 and 2016, years before the 2018 resource action took place, and none of them, apparently, were sent to Jordan. The arbitrator ordered IBM to produce the *Townsley* documents for *in camera* review. After "examin[ing]" the documents "carefully," the arbitrator determined that they "d[id] not disclose a basis for granting any of [plaintiff's] requests at [that] stage of the arbitration," so he denied plaintiff's request for discovery of the *Townsley* documents and to supplement the summary judgment filings. (Arbitrator's Order No. 21 (Jan. 7, 2022), ECF No. 22-5.)

On February 4, 2022, the arbitrator granted the motion for summary judgment, concluding that plaintiff had not adduced sufficient evidence to support a reasonable inference of age discrimination, either under the *McDonnell-Douglas* burden-shifting approach or considering the evidence as a whole. The arbitrator reasoned that plaintiff lacked evidence of valid comparators who were treated differently, it was "undisputed that the bulk of Tenuta's work . . . was winding down," and the fact that "some of Tenuta's duties remained and were taken over a few months later (not immediately) by a slightly younger employee from a younger department" was not

enough to support a reasonable inference of age discrimination. (Final Award at 17, ECF No. 5-3.) Further, although plaintiff pointed to IBM's CEO's public statements and to certain allegations in other cases as evidence of bias against older employees at higher levels of IBM management, the arbitrator concluded that plaintiff had not adduced evidence showing that any such bias affected the implementation of the resource action by influencing Thorne and Jordan.

On March 1, 2022, plaintiff moved for reconsideration of the decision, arguing, among other things, that certain documents overlapping with and in addition to the *Townsley* documents plaintiff had previously sought had been ordered to be disclosed in another age discrimination suit against IBM, *Lohnn v. IBM*, Case No. 21 cv 6379 (S.D.N.Y.). On August 8, 2022, the arbitrator denied the motion. The arbitrator explained that, although plaintiff had relied heavily on the "newly discovered" *Lohnn* documents, as plaintiff described them, he had not described how these documents differed from the *Townsley* documents or what they added to them, and the arbitrator had already reviewed the executive communications in the *Townsley* documents *in camera*. Therefore, the arbitrator reasoned that plaintiff's motion for reconsideration essentially recycled earlier discovery requests or, to the extent based on information plaintiff had not previously sought, amounted to a late discovery request that plaintiff could have made, but did not. (Arbitrator's Order Denying Claimant's Motion for Reconsideration of Final Award, ECF No. 22-1.) This suit followed.

## **ANALYSIS**

"The Federal Arbitration Act . . . authorizes a party to an arbitration agreement to seek several kinds of assistance from a federal court." *Badgerow v. Walters*, 142 S. Ct. 1310, 1314 (2022). Sections 9 and 10 of the FAA permit parties to an arbitration proceeding to "apply to the court to confirm, or alternatively to vacate, an arbitral award." *Id.*; *see* 9 U.S.C. §§ 9, 10.

District courts called upon under these sections of the FAA do not perform a searching review. *See Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994) ("Judicial review of arbitration awards is tightly limited; perhaps it ought not be called 'review' at all."). Confirmation is "usually routine or summary." *Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 691-92 (7th Cir. 2004). When a party seeks vacatur, the court "may overturn the arbitrator's award only on very narrow grounds" enumerated by section 10. *Flexible Mfg. Sys. Pty. Ltd. v. Super Prod. Corp.*, 86 F.3d 96, 99 (7th Cir. 1996). Among these are the arbitrator's "misconduct . . . in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3).

Vacatur under section 10(a)(3) is not warranted by an arbitrator's mere "refusal to receive relevant evidence"; instead, the complaining party must show that the arbitrator's "failure to consider pertinent evidence" was so egregious as to amount to "depriv[ation] . . . of a fundamentally fair hearing." *Mical v. Glick*, 581 F. App'x 568, 570 (7th Cir. 2014); *see Nosbaum v. J.P. Morgan Sec. LLC*, No. 17 C 6202, 2018 WL 3626112, at *4 (N.D. Ill. July 30, 2018) (citing, inter alia, *Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 280 (7th Cir. 1992), and *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Loc. 901*, 763 F.2d 34, 40 (1st Cir. 1985)). "On procedural and evidentiary matters, federal courts defer to arbitrators' decisions so long as those decisions are reasonable." *Bartlit Beck LLP v. Okada*, 25 F.4th 519, 522 (7th Cir. 2022). "The extent of an arbitrator's latitude is such that an 'arbitrator is not bound to hear all of the evidence tendered by the parties . . . . [H]e must [merely] give each of the parties to the dispute an adequate opportunity to present its evidence and arguments.'" *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 592 (7th Cir. 2001) (quoting *Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123, 1130 (7th Cir. 1997)). Courts have found that arbitrators deprive parties of fundamental fairness by excluding evidence that is so "central and decisive" to a party's

claim that it leaves the record essentially "barren" and "devoid of the most significant evidence." *See Steiner v. Glenn*, No. 00 C 7645, 2002 WL 31133197, at *4 (N.D. Ill. Sept. 25, 2002) (internal quotation marks omitted). But an arbitrator's evidentiary decision does not deprive a party of fundamental fairness if it there is at least a reasonable basis for it. *Bartlit Beck*, 25 F.4th at 524.

Plaintiff makes two arguments in support of his motion to vacate the arbitration award. First, he argues that the arbitrator committed misconduct in refusing to hear pertinent evidence when he denied plaintiff's motion for reconsideration based on the discovery of the *Lohnn* documents. Second, he argues that the arbitrator committed misconduct in refusing to permit discovery of demographic data on the IBM employees supervised by Jordan who, unlike plaintiff, were not considered for termination.

## I. Executive Communications From *Lohnn* Action

In rejecting plaintiff's theory that he was laid off as part of a company-wide plan imposed by upper-level executives to push out older workers, the arbitrator wrote the following:

> Regardless of any comments by IBM CEO Ginni Rometty on television or allegations in other cases, the evidence shows nothing whatsoever suggesting that some bias at higher levels against older employees flowed down to implementation of the [2018] RA within the Provider Client Experience team. Watson Health was not profitable, and it was absorbing Truven, both facts providing reasons for a reduction in force. No evidence indicates that Thorne or Jordan were directed to terminate more older employees than younger employees.

(Final Award at 17, ECF No. 5-3.)

In other words, the Final Award was based in part on the arbitrator's conclusion that plaintiff did not adduce sufficient evidence to demonstrate that any age bias among executives at IBM had flowed down to Jordan, the lower-level manager who selected him for termination based on her stated belief that plaintiff represented "an extra layer of management whose primary job functions" were being phased out. (*Id.* at 16; *see id.* at 8.) Plaintiff argues that the *Lohnn* documents

contained the sort of "appalling evidence" of age bias among IBM executives that could provide support for a reasonable inference that lower-level managers such as Jordan must have been influenced by their superiors' animus against older workers. (Pl.'s Mot. at 8, ECF No. 5.) With such evidence at his disposal, plaintiff argues, he would have survived summary judgment because the evidence would have supported a reasonable inference that his termination was part of a "top-down plan by IBM to systematically reduce the number of its older employees." (Pl.'s Mot. at 11, ECF No. 5.)

The Court is not convinced that the arbitrator committed any misconduct that deprived plaintiff of fundamental fairness. Prior to the summary judgment decision, the arbitrator performed an *in camera* review of the *Townsley* documents, which purportedly included communications demonstrating age bias among IBM executives, and he concluded that they did not "disclose a basis for granting" any request to reopen discovery and supplement the summary judgment record. In seeking reconsideration, plaintiff claimed that the *Lohnn* documents included similar executive communications, but the arbitrator was unmoved, noting that plaintiff made no showing that the *Lohnn* documents were different from the *Townsley* documents, which he had already reviewed and concluded would not materially alter the evidentiary landscape. The arbitrator did not ignore plaintiff's requests, instead examining the *Townsley* documents so that he could make an informed ruling. And plaintiff has still not explained what, if anything, distinguished the *Lohnn* documents from the *Townsley* documents that the arbitrator had already considered, so the Court can hardly conclude that the arbitrator refused to hear evidence. In fact, the arbitrator *did* hear plaintiff on this point by reviewing the *Townsley* documents, and plaintiff has not explained why the arbitrator was required to review the same or similar documents again merely because they had come to light in

another case. Under these circumstances, the Court fails to see any deprivation of fundamental fairness.

To the extent plaintiff's position is that the arbitrator's decision was wrong on the merits because the executive communications in the *Lohnn* and *Townsley* documents contained "appalling" evidence of age bias, the argument is unavailing. Plaintiff's argument amounts to a request to review the arbitrator's decision for error, which the FAA does not permit federal courts to do. The proper question is whether there was a reasonable basis for the ruling. *Bartlit Beck*, 25 F.4th at 524. The arbitrator explained in the Final Award that he discerned no connection between any apparent executive-level age bias and the employment decision at issue. (Final Award at 17, ECF No. 5-3.) It was not unreasonable for him to expect plaintiff to adduce evidence of some such connection. The Seventh Circuit has also found evidence of age bias among superiors, without evidence linking the superiors' age bias to an adverse employment action, to be insufficient to get a plaintiff over the summary judgment hump. *See Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1403–04 (7th Cir. 1996); *see also Davis v. Time Warner Cable of Se. Wisconsin, L.P.*, 651 F.3d 664, 672 (7th Cir. 2011) (summary judgment appropriate for defendant, despite evidence that manager involved in plaintiff's termination may have been a "bigot," because plaintiff did not demonstrate "a real link between the bigotry and an adverse employment action") (internal quotation marks omitted); *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 762 (7th Cir. 2001) ("[I]f someone not involved in the decisionmaking in a plaintiff's case expressed discriminatory feelings, that is not evidence that the decision was discriminatory."); *Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 781-82 (7th Cir. 2007) (remarks evidencing bias did not defeat summary judgment because they were "neither proximate nor related to the employment decision," they were not uttered by the decision maker, and there was no evidence that they influenced the

decisionmaker); *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 396–97 (7th Cir. 1997), *overruled on other grounds by Ortiz*, 834 F.3d at 765. The *Townsley* and *Lohnn* documents may have provided additional evidence of age bias among executives, but the arbitrator evidently concluded that they were no silver bullet because they did not supply the key ingredient that was missing from plaintiff's case: a connection between any executive-level age bias and the decision to lay off plaintiff.

Plaintiff has still not demonstrated any such connection, so Court cannot say that there was no reasonable basis for the arbitrator's ruling. The arbitrator had at least a reasonable basis in the governing law and the facts of this case for concluding that plaintiff needed to demonstrate some link between the age bias revealed by these executive communications and the adverse employment action at issue, and plaintiff made no such showing, either before the arbitrator or before this Court. Plaintiff has not demonstrated that the arbitrator's denial of plaintiff's motion for reconsideration based on the *Lohnn* documents amounted to misconduct in refusing to hear pertinent evidence under section 10(a)(3).

## II. Discovery of Demographic Data

Plaintiff argues that the arbitrator's refusal to permit broad discovery of the demographic data of all of the employees supervised by Jordan, including those who were never considered for termination, was fundamentally unfair because it deprived him of the evidence he needed to prove his case. Again, the Court disagrees because plaintiff has not shown that the arbitrator's discovery rulings lacked a reasonable basis.

"Generally, a plaintiff alleging disparate treatment is not entitled to company-wide discovery absent a showing of a particular need and relevance of the requested information." *Byers v. Illinois State Police*, No. 99 C 8105, 2002 WL 1264004, at *6 (N.D. Ill. June 3, 2002). Statistical evidence can be relevant to an age discrimination claim, but it is usually not sufficient to sustain the claim by itself. *See Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 423-24 (7th Cir. 2000) (citing *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616-17 (7th Cir. 2000), *overruled on other grounds by Ortiz*, 834 F.3d at 765); *Anderson v. Nat'l R.R. Passenger Corp.*, No. 03 C 7589, 2006 WL 931699, at *7 (N.D. Ill. Apr. 6, 2006). Any inquiry into the demographic data of a plaintiff's co-workers must focus on employees who were similarly situated to the plaintiff so that the comparison is "productive," and in such circumstances judges have "substantial discretion to curtail the expense and intrusiveness of discovery in limiting an adverse party's request for broad discovery of personnel files." *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003) (internal quotation marks omitted). In the abstract, an age discrimination plaintiff is entitled to broad discovery, but "courts remain concerned about fishing expeditions, discovery abuse, and inordinate expenses involved in overbroad and far ranging discovery requests," so "the Court's duty is to balance discovery so that it is neither overly restrictive nor unduly burdensome . . . consider[ing[ . . . the Plainitff's need to assess the treatment of *similarly situated* employees." *Cain v. Elgin, Joliet & E. Ry.*, No. 2:04-CV-347-RL, 2005 WL 8170023, at *1 (N.D. Ind. Sept. 2, 2005) (internal quotation marks omitted and emphasis added); *see Barnes-Staples v. Murphy*, No. 20-CV-3627, 2021 WL 1426875, at *4 (N.D. Ill. Apr. 15, 2021).

Plaintiff started out by seeking extremely broad discovery, and the arbitrator heard several motions to compel, working with the parties to narrow the discovery request to a manageable level

that balanced the parties' respective interests. He eventually ordered defendant to produce demographic information on the approximately one hundred people Jordan considered for the resource action, most of whom were at lower "band" levels. Another adjudicator might have struck the balance in a different place, but the arbitrator was entitled to attempt to impose reasonable limits on discovery so that it was focused on similarly situated individuals and allowed for productive comparisons, and the Court cannot say that the balance the arbitrator struck was unreasonable. Plaintiff was seeking demographic data about employees who were on different teams or sub-teams at different compensation levels, and, considering that even strong statistical evidence was unlikely to prove plaintiff's claim by itself, *see Adams*, 231 F.3d at 423-24, *Radue*, 219 F.3d at 616-17, *Anderson*, 2006 WL 931699, at *7 (citing *Bell v. EPA*, 232 F.3d 546, 553 (7th Cir. 2000)), the arbitrator may reasonably have judged that the discovery plaintiff was seeking was overly burdensome in proportion to the needs of the case. *See Barnes-Staples v. Murphy*, No. 20-CV-3627, 2021 WL 1426875, at *8-9 (N.D. Ill. Apr. 15, 2021). Plaintiff has not demonstrated that the limits the arbitrator imposed on discovery were so unreasonable as to amount to misconduct in refusing to hear pertinent evidence under section 10(a)(3).

**III.    Motions to Seal**

The above discussion resolves the parties' principal dispute, but it leaves one final matter to decide. The parties have filed their briefs and exhibits provisionally under seal, alongside heavily redacted public versions of the same documents, based on defendant's position that the underlying arbitration proceedings are not open to public view because there is a confidentiality provision in the arbitration agreement between the parties.

Defendant's position is not consistent with the Seventh Circuit's case law.  In *Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002), the parties contended

that a confidentiality provision in an arbitration agreement justified maintaining certain documents under seal. The court explained that such an agreement was no basis for secrecy once the parties sought judicial intervention because, under settled Seventh Circuit precedent, "the *dispositive* documents in any litigation enter the public record notwithstanding any earlier agreement," because the public is "entitled to know what the heavy financial subsidy of litigation is producing." *Id.* (citing, *inter alia*, *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000) and *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999)). Only "trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault) is entitled to be kept secret." *Id.*

In its brief in support of the motions to seal, defendant points out that IBM is not the party who filed this lawsuit; IBM would have "accept[ed] the result of the closed arbitration," just as the Seventh Circuit directed parties seeking confidentiality to do in *Baxter*, 297 F.3d at 548. The Court has some sympathy for defendant here. *See Stafford v. Int'l Bus. Machines Corp.*, No. 22-1240, 2023 WL 5183546, at *5 (2d Cir. Aug. 14, 2023). Nevertheless, the Seventh Circuit foreclosed this argument in *Baxter*, explaining that "the right judicial response to the initiation of litigation that reveals information subject to contractual confidentiality is not specific performance of the confidentiality agreement but damages for breach of contract." *Id.* So, IBM may have a separate claim against plaintiff, if it can show injury. *See id.*; *see also Aioi Nissay Dowa Ins. Co. v. ProSight Specialty Mgmt. Co.*, No. 12 CIV. 3274 JPO, 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 21, 2012) ("[W]hile enforcement of contracts is undeniably an important role for a court, it does not constitute a 'higher value' that would outweigh the presumption of public access to judicial documents. . . . Respondents may have an action for breach of contract against [petitioner] for its

alleged failure to adhere to its obligations under the confidentiality agreement—the Court makes no finding whatsoever on that question."). But the confidentiality provision in the arbitration agreement between the parties does not justify secrecy here.

The Seventh Circuit requires the documents that "influence or underpin the judicial decision" to be "open to public inspection," unless they meet the exceptions for trade secrets, privileged information, or information protected by statute. *Baxter*, 297 F.3d at 545. None of those exceptions are met here. Therefore, the Court orders unsealed the parties' briefs and those documents that the Court has cited in this Memorandum Opinion and Order.

## CONCLUSION

For the foregoing reasons, plaintiff Bruce Tenuta's petition to vacate arbitration award [1] and motions to vacate arbitration award [5] [6] are denied. The final arbitration award in defendant's favor is confirmed.

The parties' motions to seal [20] [25] are granted in part and denied in part. The motions to seal are denied as to documents [5] [5-1] [5-3] [5-4] [5-6] [22] [22-1] [22-2] [22-3] [22-5] [27]; the Clerk is directed to unseal these documents. The motions to seal are otherwise granted.

All matters in controversy having been resolved, final judgment will enter in favor of defendant IBM and against plaintiff. Civil case terminated.

SO ORDERED.                                              ENTERED: August 31, 2023

                                                                    _____
                                                                    **HON. JORGE ALONSO**
                                                                    **United States District Judge**